UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JACE WALLACE, <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of the Social Security Administration, <br><br> Defendant. | CAUSE NO.: 1:24-CV-517-TLS |

**OPINION AND ORDER**

The Plaintiff Jace Wallace seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income. The Plaintiff argues that the Administrative Law Judge (ALJ) erred in weighing the medical opinion evidence and in formulating his residual functional capacity. For the reasons set forth below, the Court finds that substantial evidence supports the ALJ's decision and there is no basis to remand for further review.

**PROCEDURAL BACKGROUND**

On January 12, 2023, the Plaintiff filed an application for supplemental security income, alleging disability beginning on March 1, 2018. AR 320, 359–60, ECF No. 8. After the claim was denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on June 25, 2024. AR 320, 334–58. On July 23, 2024, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 320–29. The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1–6, 494–96. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C.

§ 405(g). On December 6, 2024, the Plaintiff filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 13, 17, 20.

**THE ALJ'S DECISION**

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see* 20 C.F.R. § 416.905(a). To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 416.920.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 416.920(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since January 12, 2023, the application date. AR 322.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of paranoid schizophrenia, generalized anxiety disorder, and major depressive disorder, recurrent, moderate. AR 322.

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R.

§ 416.920(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 416.920(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, indicating that she considered Listings 12.03, 12.04, and 12.06. AR 323.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see* 20 C.F.R. § 416.920(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can tolerate occasional interaction with coworkers, supervisors, and the public. The claimant can carry out simple instructions.

AR 325.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work given the RFC. 20 C.F.R. § 416.920(a)(4)(iv), (f). In this case, the ALJ noted that the Plaintiff has no past relevant work under 20 C.F.R. § 416.965. AR 328.

If the claimant is unable to perform past relevant work, the ALJ considers at step five whether the claimant can "make an adjustment to other work" given the RFC and the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not disabled because he can perform significant jobs in the national economy of landscape laborer, industrial cleaner, and laundry worker. AR 328. The claimant bears the

3

burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see* 20 C.F.R. § 416.912.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and

4

must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

In this appeal, the Plaintiff argues that the ALJ erred in failing to properly weigh the opinion evidence of the state-agency reviewing psychologists and failed to properly formulate the RFC. The Commissioner responds that the ALJ's decision is supported by substantial evidence. The Court considers each argument in turn.

**A.      State-Agency Reviewing Psychologists' Opinions**

The Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of the state-agency reviewing psychologists. An ALJ has an obligation to evaluate every medical opinion and explain the persuasiveness of the opinion. *See* 20 C.F.R. § 416.920c(a), (b). Medical opinions are evaluated using the following factors: (1) supportability, which means how well the objective medical evidence and supporting explanations presented by a medical source support the opinion; (2) consistency, which means how consistent the medical opinion is with the evidence from other medical sources and nonmedical sources; (3) relationship with the claimant, which considers the length of a treatment relationship, the frequency of examinations, the purpose of a treatment relationship, the extent of a treatment relationship, and whether there is an examining relationship; (4) specialization of the medical source; and (5) any other factors that tend to support or contradict the medical opinion. *Id.* § 416.920c(c)(1)–(5). The most important

factors for evaluating the persuasiveness of a medical opinion are supportability and consistency. *Id.* § 416.920c(a), (b)(2). Therefore, the ALJ must explain how the ALJ considered those two factors in making the disability decision. *Id.* § 416.920c(b)(2). The ALJ may, but need not, explain how the ALJ considered the remaining three factors. *Id.* Importantly, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 362207, at *7 (July 2, 1996).

At the initial consideration level, Donna Unversaw, Ph.D. found that the Plaintiff has a moderate concentration limitation in "[t]he ability to maintain attention and concentration for extended periods" and a moderate social limitation in "[t]he ability to interact appropriately with the general public." AR 364. In the narrative mental RFC, Dr. Unversaw found, as to concentration, that the Plaintiff "can understand, remember, and carry out detailed, but not complex tasks," "can attend to tasks for a sufficient period to complete tasks," and "can manage the stresses involved with detailed work-related tasks." AR 365. As for social interaction, Dr. Unversaw found that the Plaintiff "would be able to manage occasional contact with the public but sustained, intensive, interpersonal contact would be precluded," "would appear to work best alone, in semi-isolation from others or as part of a small group," and "seems to be able to maintain at least a minimal level of relationship with others." AR 364–65. On reconsideration, Joelle J. Larsen, Ph.D. found the same moderate limitations in concentration and social interaction as well as a moderate concentration limitation in "[t]he ability to carry out detailed instructions," AR 372, and affirmed Dr. Unversaw's narrative findings. AR 372–73.

In evaluating this opinion evidence, the ALJ first accurately summarized each of these findings, noted that neither psychologist had examined the Plaintiff, and then found the opinions

to be partially persuasive. AR 327. Regarding social limitations, although the ALJ agreed that the Plaintiff has a moderate limitation, the ALJ did not adopt the opinion that the Plaintiff was precluded from "sustained" or "intensive" interpersonal contact. *Id.* The ALJ found that those limitations "were not phrased in vocationally relevant terms rendering them less useful in formulating a residual functional capacity finding." *Id.* She also reasoned that the medical opinion that the Plaintiff is "able to maintain a minimal level of relationship" with others describes "the least" the Plaintiff can do, rather than "the most." *Id.*; *see* 20 C.F.R. § 416.945(a)(1) ("Your [RFC] is the most you can do despite your limitations."). The ALJ concluded that, as a result, these opinions "cannot serve as a basis for social limitations given the ambiguity of the terms and lack of supportive comments." AR 327. The ALJ then found the evidence of record, as discussed earlier in her decision, consistent with a moderate limitation in interacting with others and supports limiting the Plaintiff to "occasional interaction with supervisors, co-workers, and the public." *Id.*

Regarding concentration limitations, the ALJ made a similar finding as to the state-agency psychologists' opinion that the Plaintiff can "attend to tasks for a 'sufficient period' to complete tasks." *Id.* (quoting AR 373). Again, the ALJ found that this opinion was not given in vocationally relevant terms and, thus, was "less useful in formulating a residual functional capacity finding." *Id.* In addition, the ALJ found the narrative opinion that the Plaintiff "can understand, remember, and carry out detailed tasks" inconsistent with the more restrictive checkbox finding that the Plaintiff has a moderate impairment in "[t]he ability to carry out detailed instructions." *Id.* The ALJ concluded that "[t]he findings are also inconsistent with the objective medical evidence of record, which documents improved mental status findings in concurrence with medication and therapy." *Id.* The ALJ nevertheless limited the Plaintiff "to

simple tasks to account for any effects [his] symptoms would have on his ability to concentrate or persist on any job tasks." *Id.*

The Plaintiff first argues that the ALJ did not provide any citations to the record to support the finding that the state-agency psychologists' "findings are inconsistent with objective medical evidence of record, which documents improved mental status findings in concurrence with medication and therapy." This is incorrect. At both step three of the sequential analysis and at the outset of the RFC determination, the ALJ discussed in detail, with citations to the record, the Plaintiff's mental health treatment records consisting largely of normal findings, the Plaintiff's improvement with treatment, the lack of inpatient treatment, and the Plaintiff's reports to providers that his symptoms improved with medication. AR 323, 326; *see Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (explaining that the court does not discount the ALJ's discussion of evidence "simply because it appears elsewhere in the decision"); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) (explaining that "it is proper to read the ALJ's decision as a whole" and that "it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision).

Next, the Plaintiff contends that, while the ALJ agreed with the moderate limitations in social interactions, the ALJ ignored three pieces of evidence the Plaintiff contends support and are consistent with the state-agency reviewing psychologists' opinion that the Plaintiff could have no "sustained" or "intensive" interpersonal contact. As an initial matter, the ALJ did not err by finding the opinion not persuasive because the limitation was not made in vocationally relevant terms for purposes of formulating an RFC. *See Leisgang v. Kijakazi*, 72 F.4th 216, 221 (7th Cir. 2023) (finding "the ALJ rightly noted" that the psychologist's opinion that claimant would have "some difficulty" with certain tasks was "vague"); *Reynolds v. Kijakazi*, 25 F.4th

470, 473–74 (7th Cir. 2022) (affirming where the ALJ determined that the state agency psychologist's opinion that the claimant "will likely struggle" with social interaction was unpersuasive because it was vague and speculative); *Recha v. Saul*, 843 F. App'x 1, 5 (7th Cir. 2021) (noting that the treating psychologist's opinion that the claimant experienced "difficulties" in broad areas of functioning "did not suggest any specific work-related restrictions").

As for the three pieces of evidence purportedly ignored by the ALJ, the Plaintiff argues that an ALJ cannot ignore an entire line of evidence that supports a finding of disability. However, as cited by the Plaintiff, an ALJ "need not discuss every piece of evidence in the record and is prohibited only from ignoring an entire line of evidence that supports a finding of disability." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) (finding no error where the ALJ discussed a 2003 MRI but not a 2006 MRI where doctors described the degenerative changes found in the 2006 MRI as "mild" (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (finding the ALJ erred by not considering two separate, additional impairments))). Here, the three pieces of evidence, described below, do not constitute an "entire line of evidence" as they are part of the line of evidence related to the Plaintiff's concentration and social limitations discussed by the ALJ. And, even in combination, these pieces of evidence do not demonstrate that the ALJ erred in considering the state-agency reviewing psychologists' opinions.

The first alleged omission is when the ALJ noted in the step three analysis that the Plaintiff "denied having problems with getting along with friends and family," AR 323, but then failed to acknowledge that the Plaintiff was incarcerated because of a fight he had with his father. The argument is not well taken. In the same paragraph, the ALJ noted both that the Plaintiff "denied having problems getting along with friends and family," AR 323 (citing AR 590 (Ex. 7E (Nov. 2023 adult function report))), and that the record indicates that the Plaintiff

9

"has a violent criminal history involving *domestic battery* while armed with a deadly weapon," *id.* (emphasis added) (citing AR 650–955, 1037, 1044 (Exs. 2F, 3F/82, 89)). That the ALJ did not specify that the "domestic battery" was with the Plaintiff's father is immaterial. And as discussed in the next paragraph, ALJ then explained that, despite his criminal history, the Plaintiff "is generally described as calm, pleasant, and cooperative by medical providers." *Id.*

The second alleged omission is that, in finding at step three that "health records suggest that medications have helped with his paranoia and intrusive thoughts" and he was "generally described as calm, pleasant, and cooperative by medical providers," AR 323 (citing AR 956–1061, 1072–1173 (Exs. 3F (1/27/2017–8/1/2023), 6F (8/10/2023–4/10/2024))), the ALJ disregarded evidence that the Plaintiff's psychiatrist changed his prescribed anti-psychotic medication multiple times because he continued to experience breakthrough hallucinations, particularly when he interacted with others. However, in the RFC analysis, the ALJ more fully discussed and cited the medical records, both from the period of the Plaintiff's incarceration as well as following his release from prison in February 2023. AR 326.

In that discussion, the ALJ noted that, upon his release, the Plaintiff underwent a psychiatric evaluation, which found his insight and judgment to be "fair," his intelligence estimated to be average, his memory intact, and his concentration within normal limits. *Id.* (citing AR 1037–41 (Ex. 3F/82–86)). Importantly, the ALJ then noted that, "[a]lthough mental health records from Bowen Center document reports of hallucinations, there is no evidence that the claimant required inpatient mental health treatment during the relevant period" and "[d]espite the [Plaintiff's] reports of auditory and visual hallucinations, mental status exams indicate that no hallucinations are evident during the clinical evaluations." *Id.* (citing AR 956–1061, 1072–1173) (Exs. 3F; 6F)); *see, e.g.*, AR 1003 (hallucinations denied, none evidenced), 1027 (same), 1035

(same), 1043 (same) 1120 (same), 1158 (same). The ALJ again noted that the Plaintiff was routinely described as having a logical thought process as well as cognition, insight, and judgment within normal limits. AR 326 (citing AR 956–1061, 1072–1173 (Exs. 3F; 6F)); *see, e.g.*, AR 1003, 1027, 1051–52, 1119–20, 1158. And the ALJ accurately noted the records that the Plaintiff's symptoms improved with medications. AR 326 (citing AR 1082, 1085, 1124, 1131, 1148–50, 1159 (Ex. 6F/11, 14, 53, 60, 77–79, 88)). That the ALJ did not specifically note that the medications were being adjusted for breakthrough hallucinations does not change the accuracy of the findings of improvement. And as discussed in Part B below, the ALJ properly considered the Plaintiff's subjective symptoms under the relevant standard.

The third alleged omission is that the ALJ did not discuss evidence that the Plaintiff "relied on the assistance of his skills coach to make and attend appointments, complete paperwork, and comply with the terms of his probation." Pl. Br. 13 (citing AR 962, 964, 972, 982, 1096, 1152, 1165). It is unclear how this assistance of the skills coach as well as working on impulse control, personal hygiene, and emotional regulation show that the Plaintiff is unable to interact with others on an occasional basis in the work environment or is unable to carry out simple instructions. In fact, it appears that his interaction with the skills coach is consistent with an ability to get along with others, which is consistent with the treatment records showing the Plaintiff as calm, pleasant, and cooperative with medical providers. *See* AR 323. The Plaintiff provides no explanation of how the use of a skills coach is consistent with or supports the opinion evidence on social interaction not relied on by the ALJ.

The Plaintiff next argues that the ALJ substituted her own lay opinion for the medical opinions when she partially rejected the opinions of the state-agency reviewing psychologists, as they were the only medical opinions of record. However, the Plaintiff fails to recognize that the

11

RFC is a legal decision, rather than a medical one, *see Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014), and an ALJ is not required to rely entirely on a specific physician's opinion or choose between the opinions of physicians, *see Schmidt*, 496 F.3d at 845 (citation omitted). This is not a situation where the ALJ made independent medical findings. *See Rohan v. Chater*, 98 F3d 966, 970 (7th Cir. 1996). Rather, the ALJ considered all the evidence of record, including the medical opinions, analyzed the opinions according to the regulations, and then formulated an RFC that is supported by substantial evidence. *Cf. Suide v. Astrue*, 371 F. App'x 684, 689–90 (7th Cir. 2010) (finding an evidentiary deficit when the ALJ rejected a medical opinion and the remainder of the record did not support the RFC). As for the state-agency reviewing psychologists' opinion that the Plaintiff could perform "detailed tasks," the ALJ found the record supported a *greater* limitation of only "simple tasks" to reflect the Plaintiff's reduced ability to concentrate and persist. AR 327; *see Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) (finding that "a fundamental problem is that [the claimant] offered no opinion from any doctor to set . . . any other limits, greater than those the ALJ set" (citation omitted)); *Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error." (citation omitted)).

Finally, the Plaintiff suggests that the ALJ was required to seek another medical opinion after finding portions of the state-agency psychologists' opinions less than persuasive. However, the Plaintiff, who was represented by counsel throughout the proceedings, has not met his burden of introducing objective evidence that further development of the record is required. *See Wilcox v. Astrue*, 492 F. App'x 674, 678 (7th Cir. 2012) (citing *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009)); *Summers*, 864 F.3d at 527 (noting that a represented claimant is presumed to have made the best case).

Thus, the ALJ's discussion of the state-agency reviewing psychologists' opinions more than met the minimal articulation requirements for evaluating opinion evidence. *See Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (citing *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024)). The case cited by the Plaintiff—*Willis v. Acting Comm'r of Soc. Sec.*, 3:21-CV-178, 2022 WL 2384031, *3 (N.D. Ind. July 1, 2022)—is distinguishable because the ALJ had failed to provide a detailed explanation of how the medical opinions were considered and because the court could not determine whether the ALJ's opinion was otherwise supported by substantial evidence. Here, the ALJ provided a detailed consideration of the medical opinions, and as explained below, the RFC determination is supported by substantial evidence.

**B.    The RFC Determination**

The Plaintiff also argues that the ALJ failed to properly formulate the Plaintiff's RFC and that the RFC is not supported by substantial evidence.

An RFC is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes the claimant's medical history; medical signs and laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. "[B]oth the hypothetical posed to the

VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). As noted above, the determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas*, 745 F.3d at 808 (citing 20 C.F.R. § 404.1527(d)).

1.  *State-Agency Reviewing Psychologists*

First, the Plaintiff argues that the RFC is not supported by substantial evidence based on the ALJ's failure to properly consider the medical opinion evidence. As held in Part A above, the ALJ did not err in considering the medical opinion evidence.

2.  *The Plaintiff's Subjective Symptoms*

The Plaintiff also argues that the RFC is not supported by substantial evidence because the ALJ failed to consider whether the Plaintiff can perform the RFC functions on a regular and continuing basis, meaning for an eight-hour workday for a five-day workweek. The Plaintiff contends that the ALJ failed to incorporate specific limitations from the Plaintiff's credible and well-documented mental impairments and symptoms of mental illness, such as auditory hallucinations, delusional thoughts, paranoia, anxiety, and depression. However, the ALJ properly considered all the Plaintiff's subjective symptoms and adequately explained why she found the Plaintiff not as limited as he alleges.

SSR 16-3p requires the ALJ to "consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). The "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly

articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

"In evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the ALJ] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [her]." 20 C.F.R. § 416.929(a). The ALJ must consider all the available evidence from medical sources, nonmedical sources, and medical opinions. *Id.* § 416.929(c)(1). The regulations provide the following factors to be considered relevant to a claimant's symptoms:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

*Id.* An ALJ's subjective symptom assessment is entitled to great deference, and it should be upheld unless patently wrong. *See Summers*, 864 F.3d at 528; *Schmidt*, 496 F.3d at 843.

Here, the ALJ sufficiently met this standard. The ALJ acknowledged that, according to the Plaintiff, "his mental health symptoms are characterized by a lack of motivation, loss of interest, excess fatigue, irritability, inability to focus, poor concentration, panic attacks, paranoia, hallucinations, and memory problems." AR 325 (citing AR 586–93 (Ex. 7E)). The ALJ also noted the Plaintiff's hearing testimony that his social anxiety makes it hard for him to go out in public and his auditory hallucinations cause anxiety and impair his ability to focus. *Id.* While

recognizing the medically determinable impairments that can be expected to cause the Plaintiff's symptoms, the ALJ found the Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms . . . inconsistent with [the] mental health record." *Id.*

As mentioned in Part A, the ALJ noted that the treatment records prior the Plaintiff's February 2023 application for SSI, which consisted of prison medical records, documented largely normal clinical findings. AR 326 (citing AR 650–955 (Ex. 2F)). As noted by the Defendant, those treatment records repeatedly described the Plaintiff as cooperative, with normal cognition, thought process, insight, and judgment. *See* AR 657, 666, 669, 677, 694, 700, 715, 721, 727, 743, 760, 763, 769, 787, 805, 839, 858, 896, 914, 932, 942. Acknowledging that some records showed mildly impaired judgment and partial insight with reports of auditory hallucinations, the ALJ found the overall record did not support the alleged severity of the symptoms. AR 326 (citing AR 923–44 (Ex. 2F/274–95)). As noted by the Defendant, the prison medical records repeatedly reflected no significant anxiety or cognitive issues, denial of auditory hallucinations, no significant depression, improved psychotic symptoms, and overall good progress. *See* AR 785, 837, 870, 886, 924.

The ALJ then considered the medical records beginning in February 2023 following the Plaintiff's release from prison. As recited in Part A above, the initial psychiatric evaluation found the Plaintiff to have "fair" insight and judgment, average intelligence, intact memory, and concentration within normal limits. AR 326 (citing AR 1037–41 (Ex. 3F/82–86)). Again, despite the Plaintiff's reports, mental status exams indicated that no hallucinations were evident during clinical evaluations. AR 326 (citing AR 956–1061, 1072–1173) (Exs. 3F; 6F)); *see, e.g.*, AR 1003 (hallucinations denied, none evidenced), 1027 (same), 1035 (same), 1043 (same) 1120 (same), 1158 (same).

As discussed above, the ALJ noted that the Plaintiff's symptoms improved with medication. AR 325, 326; *see* 20 C.F.R. § 416.929(c)(3)(iv); *Prill v. Kijakazi*, 23 F.4th 738, 749–50 (7th Cir. 2022) ("[Treatment notes support the ALJ's finding that the pain medications facilitated improvements in Prill's symptoms that enabled her to function at work . . . ."). The ALJ also considered the Plaintiff's activities, noting that the Plaintiff's allegation that he struggled to get out of bed and complete daily tasks due to a lack of motivation. AR 324. However, the ALJ did not fully credit the allegation, noting that the treatment records generally described the Plaintiff as groomed and that he was actively seeking employment and capable of following through with personal responsibilities. AR 324 (citing AR 1011, 1137, 1142 (Ex. 3F/56, 6F/66, 6F/71)). Considering the evidence as a whole, the ALJ found "[t]he longitudinal evidence did not persuade [her] to find greater limitations that those already included in the residual functional capacity assessment as nothing in the record suggests that the claimant's symptoms prevent him from being able to maintain gainful employment." AR 326.

To the extent the Plaintiff argues that the ALJ did not account for time that the Plaintiff would be off task or would be absent from work, the burden is on the Plaintiff to identify evidence supporting such limitations. *See* 20 C.F.R. § 416.912(a); *Gedatus*, 994 F.3d at 905 (noting the claimant "bears the burden to prove [he] is disabled" (citation omitted)). Here, the Plaintiff relies only on his subjective statements, which the ALJ found inconsistent with the medical record. *See Reynolds*, 25 F.4th at 473 ("[A]n ALJ need only include limitations that are supported by the medical record." (citation omitted)). The Court cannot substitute its "judgment for the ALJ's when considering the weight of the evidence, and [the Plaintiff] must do more than point to a different conclusion that the ALJ could have reached to demonstrate that the credibility

determination was patently wrong." *Jones*, 623 F.3d at 1162 (citing *Ketelboeter v. Astrue,* 550 F.3d 620, 624 (7th Cir. 2008)).

For all these reasons, the Court finds that the RFC determination is supported by substantial evidence and the ALJ did not err in creating a logical bridge from the evidence to her decision.

## CONCLUSION

For the reasons stated above, the Court DENIES the relief sought in the Plaintiff's Brief [ECF No. 13] and AFFIRMS the decision of the Commissioner of the Social Security Administration. The Court DIRECTS the Clerk of Court to ENTER FINAL JUDGMENT stating:

> Final judgment is entered in favor of the Defendant Commissioner of Social Security and against the Plaintiff Jace Wallace, who takes nothing by his Complaint.

SO ORDERED on February 12, 2026.

> s/ Theresa L. Springmann
> JUDGE THERESA L. SPRINGMANN
> UNITED STATES DISTRICT COURT